UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAI PENG, SAIZHANG GUAN and LONGBIN LI, *on behalf of themselves and the Class*,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>　　　　　　　　Defendant. | Civ. Act. No. 1:16-cv-00545 (SJ)(RER) |

### DECLARATION OF MICHAEL COLMAN IN SUPPORT OF DEFENDANT UBER TECHNOLOGIES, INC.'S MOTION TO COMPEL ARBITRATION

　　1.　　The information set forth herein is true and correct of my own personal knowledge (unless otherwise stated) and if asked to testify thereto, I would do so competently.

　　2.　　I am an Operations Specialist at the San Francisco headquarters of Uber Technologies, Inc. ("Uber"). I have been employed by Uber since October 19, 2011, and have worked as an Operations Specialist since February 2013. In that role, I consult with operations teams throughout the country regarding nearly every facet of Uber's operations and have comprehensive personal knowledge of Uber's business model, as well as the operations of Uber's wholly-owned subsidiaries, including Uber USA, LLC ("Uber USA").

　　3.　　Uber is a technology company based in San Francisco that connects individuals looking for transportation ("riders") with independent transportation providers looking for passengers ("drivers"). Uber provides the technology, through its smartphone application (the "App") that allows riders and drivers to connect based on their location. Uber offers the App as

1

a tool to both riders and drivers to facilitate transportation services, and it charges a service fee to drivers for use of the App.

4. Using the App, riders can connect with available drivers offering a variety of transportation options.

5. The App is available to riders and drivers in over 150 cities across the country.

6. As an Operations Specialist for Uber, I am familiar with the process drivers must go through to sign up to use the App and the various documents to which they must assent in order to use the App. I also have access to Uber's business records reflecting the identity of drivers that use the App, as well as the individuals whom these drivers have engaged. These records are maintained in the regular course of Uber's business and updated as new drivers join and leave the system.

7. In New York City, drivers seeking to access the Uber platform to generate leads for potential riders must first enter into an agreement with Uber USA to use the App. Drivers using the Uber platform can hire other individuals to drive vehicles and transport riders on their behalf under their Uber account. Accordingly, all drivers must also accept a "Driver Addendum," which incorporates by reference the operative arbitration provision.

8. In order to electronically accept the operative agreement, a driver must first log in to the App where the agreement is available for review by clicking a hyperlink presented on the screen. Drivers are free to spend as much time as they wish reviewing the agreement on their smartphones. However, to advance past the screen with the hyperlink to the agreement and actively use the App, drivers need to click "YES, I AGREE" to the agreement presented. After clicking "YES, I AGREE," drivers are prompted to confirm their acceptance a second time. A true and correct copy of the "YES, I AGREE" screenshot is attached hereto as **Exhibit A**. A true

2

and correct copy of the confirmation screenshot is attached hereto as **Exhibit B**. After drivers accept the agreement, the agreement is automatically transmitted to their Driver Portal (described below) where they can review it at their leisure, either online on any device or by printing a copy.

9. Uber periodically revises its agreements, and drivers who have previously entered into an agreement with Uber or its subsidiaries may be required to assent to revised versions of the contract in order to receive continued access to the App. When a revised agreement is rolled out, the process described above is repeated.

10. I have access to Uber's databases reflecting the dates and times that drivers accept their applicable agreements. These databases are maintained in the regular course of Uber's business and updated automatically as drivers agree to these documents. When a driver agrees to one of those documents through the App, an electronic receipt is generated at the time the driver agrees to the documents. The receipts include a date and timestamp indicating acceptance.

11. Based on my review of Uber's business records, the Plaintiffs in this case completed the sign-up process to use the App by accepting the April 3, 2015 Software License and Online Services Agreement (the "April 2015 Services Agreement")[1] and the November 10, 2014 Driver Addendum ("November 2014 Driver Addendum"), which were the operative agreements at the time, as follows:

    a. Plaintiff Kai Peng completed the sign-up process to use the Uber platform to generate leads for potential riders on or about June 29, 2015. Plaintiff Peng accepted the April 2015 Services Agreement and November 2014 Driver Addendum on June 29, 2015

---

[1] On the Driver Portal, the April 2015 Services Agreement is referred to as the Transportation Company Agreement. *See, e.g.*, Exs. G-I.

through the process described above, and his account was activated. He completed his first trip using the App on June 29, 2015.

    b. Plaintiff Saizhang Guan completed the sign-up process to use the Uber platform to generate leads for potential riders on or about July 30, 2015. He accepted the April 2015 Services Agreement and the November 2014 Driver Addendum on July 30, 2015 through the process described above, and his account was activated. He completed his first trip using the App on July 30, 2015.

    c. Plaintiff Longbin Li completed the sign-up process to use the Uber platform to generate leads for potential riders on or about October 21, 2015. He accepted the April 2015 Services Agreement and the November 2014 Driver Addendum on October 21, 2015 through the process described above, and his account was activated. He completed his first trip using the App on October 21, 2015.

12. A true and correct copy of the April 2015 Services Agreement that each of the Plaintiffs accepted through the App is attached hereto as **Exhibit C**.

13. A true and correct copy of the November 2014 Driver Addendum that each of the Plaintiffs accepted through the App is attached hereto as **Exhibit D**.

14. On December 11, 2015, Plaintiffs were presented with and accepted a revised agreement through the App, the December 11, 2015 Technology Services Agreement (the "December 2015 Services Agreement"). As with the April 2015 Services Agreement, Plaintiffs needed to accept the December 2015 Services Agreement electronically through the process described above in paragraph 8 in order to continue to generate leads for potential riders using the Uber platform. For the December 2015 Services Agreement, the hyperlink discussed above was entitled "UBER USA Technology Services Agreement December 10 2015."

15. A true and correct copy of the December 2015 Services Agreement each of the Plaintiffs accepted through the App is attached hereto as **Exhibit E**.

16. Plaintiffs were also presented with a revised driver addendum on December 11, 2015. Plaintiff Peng, Plaintiff Guan, and Plaintiff Li each accepted the December 2015 Driver Addendum on December 11, 2015.

17. A true and correct copy of the December 2015 Driver Addendum each of the Plaintiffs accepted through the App is attached hereto as **Exhibit F**.

18. Based on my review of Uber's business records, Plaintiff Peng, Plaintiff Guan, and Plaintiff Li all remain "active" on the Uber system.

19. After accepting his/her agreement, drivers have the opportunity to opt out of the Arbitration Provision if they desire. As an Operations Specialist, I have access to Uber's business records reflecting the names of those individuals who have elected to opt out of a particular arbitration provision. The opt out records are maintained in the regular course of Uber's business and updated as drivers elect to opt out. Based on my review of these records, Plaintiff Peng, Plaintiff Guan, and Plaintiff Li did not opt out of the Arbitration Provision in the April 2015 Services Agreement. Plaintiff Peng, Plaintiff Guan, and Plaintiff Li also did not timely opt out of the Arbitration Provision in the December 2015 Services Agreement. Uber's business records reflect that thousands of drivers did, in fact, opt out of one or more of the arbitration provisions contained in the various agreements in place between Uber and its subsidiaries, and the drivers who use the App.

20. All drivers who sign up to use the App are given access to an online "Driver Portal." The Driver Portal stores information (particular to each driver) regarding the services provided by that driver through the Uber platform. The Driver Portal also includes access to the

contracts entered into by any given driver via a conspicuous download button. For example, drivers who use the Uber platform to generate leads for potential riders are able to access their portal and review the operative Agreement. The Driver Portal is accessible online to drivers at all times. They may access the information by logging into their Uber account by using the Internet on a computer, tablet, smartphone, or similar device. A true and correct copy of Plaintiff Peng's Driver Portal showing links to the contracts that he entered into is attached hereto as **Exhibit G**. A true and correct copy of Plaintiff Guan's Driver Portal showing links to the contracts that he entered into is attached hereto as **Exhibit H**. A true and correct copy of Plaintiff Li's Driver Portal showing links to the contracts that he entered into is attached here to as **Exhibit I**.

21. A true and correct copy of the electronic receipts that Uber received following Plaintiff Peng's acceptance of the April 2015 Services Agreement, November 2014 Driver Addendum, December 2015 Services Agreement, and December 2015 Driver Addendum is attached hereto as **Exhibit J**. A true and correct copy of the electronic receipts that Uber received following Plaintiff Guan's acceptance of the April 2015 Services Agreement, November 2014 Driver Addendum, December 2015 Services Agreement, and December 2015 Driver Addendum is attached hereto as **Exhibit K**. A true and correct copy of the electronic receipts that Uber received following Plaintiff Li's acceptance of the April 2015 Services Agreement, November 2014 Driver Addendum, December 2015 Services Agreement, and December 2015 Driver Addendum is attached hereto as **Exhibit L**.

22. In New York City, drivers need to comply with applicable rules and regulations promulgated by the Taxi and Limousine Commission ("TLC") before accessing the Uber platform to generate leads for potential riders. Given the standards imposed by the TLC to

obtain a for-hire vehicle license, neither Uber nor its agents procures consumer reports for drivers using the app in New York.

I declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed in San Francisco this 15 day of April 2016.

_____
MICHAEL COLMAN